UNITED STATES of America

v.

**Marvin COLEY, Defendant.**

**Crim. No. 92–0083 ss.**

United States District Court,
District of Columbia.

Aug. 25, 1992.

Eric M. Acker, Asst. U.S. Atty., Washington, D.C., for government.

Professor James Robertson, Washington, D.C., for defendant.

---

**1.** The defendant was charged in the indictment with one count of distribution of over five grams of crack cocaine in violation of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(B)(iii), and one count of distribution of crack cocaine to a person under twenty-one years of age, in violation of 21 U.S.C. Section 859(a). Both counts, however, concern the same single alleged act of distribution.

## MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

This case comes before the Court on the Defendant's Motion for the Entry of a Judgment of Acquittal After the Declaration of a Mistrial and Discharge of the Jury. *See* Fed.R.Crim.P. 29(c). The Court held a trial on the indictment against the defendant in which the jury was discharged and a mistrial declared *sua sponte* after the jury informed the court that it was unable to reach a unanimous verdict on either of the two counts.[1] The Defendant timely filed a motion for a judgment of acquittal. After considering the totality of the evidence in this case, this Court finds that the proof was legally insufficient to sustain a conviction on the charges against the defendant. Therefore this Court will grant the Defendant's motion and order the entry of a judgment of acquittal in the defendant's case.

### DISCUSSION

The standard for deciding a motion for a judgment of acquittal was long ago set forth by this Circuit in *Curley v. United States*, 160 F.2d 229, 232 (D.C.Cir.1947) (emphasis added).

> The true rule, therefore, is that a trial judge, in passing upon a motion for a directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inference of fact, a *reasonable mind might fairly conclude guilt beyond a reasonable doubt.* If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion[.]

Having heard the evidence in this trial, this Court finds that a fair consideration of the

When discharged the jury was deadlocked at 10–1 in favor of acquitting the defendant on both counts (one juror had become ill and pursuant to Fed.R.Crim.P. 23 both the government and the Defendant stipulated that 11 jurors could return a valid verdict in the case).

evidence could not lead a reasonable juror to conclude that the defendant was guilty beyond a reasonable doubt.

To begin with, there were serious discrepancies in the government's own evidence at the close of its case-in-chief. The testimony of the police officers was inconsistent with the clear physical evidence in key areas. Investigator Young, one of the "jumpouts" who apprehended the Defendant, gave the only eyewitness testimony which directly tied the defendant to the crime of which he was accused. No narcotics were ever recovered from Coley's person or directly tied to him apart from Young's testimony. Young testified that he saw the defendant hand another person, Taylor, two paper bags. Young then testified that he saw Taylor attempt to flee and that he saw Taylor throw the bags near a picnic bench, where they were immediately recovered. Therefore, no one but Young directly tied the Defendant to the drugs.

Young's testimony, however, was contradicted not only by other officers but by the unmistakable physical evidence presented. First, Young's testimony regarding his running approach towards the Defendant was flawed in key respects. Young did not recall having to negotiate any fence during the time he approached and observed the defendant. In fact, he testified that he remembered no fence in his path. Transcript of Proceedings Vol. II at 41 ("Tr."). The pictures and videotape introduced by the government, however, showed unequivocally that there was a fence—old and rusted—directly in the route which the officer claims he took as he was observing the people at Montana Terrace. Thus, there was a material lapse in the police officer's memory concerning the precise moment when he linked the Defendant to the drugs in this case.

Second, the investigator, who claimed to have observed the drugs thrown to the ground by a juvenile, testified that the entire operation occurred after dark and gave extensive testimony both on the artificial lighting at the time and the use of flashlights. Tr. at 55–58. However, other evidence offered by the government supported the theory that it was not even dark yet at the time of the operation.

Third, Young testified that he received a description of a person selling drugs which caused him to go to Montana Terrace. Tr. Vol. II at 50. That description, however, materially differed from the description of the Defendant given by the government's own expert witness, Detective David Stroud. *Id.* at 195. There were also discrepancies in the government's evidence as to such basic points as which police officers or how many police officers were at the scene and whether or not their weapons were drawn at the time of the arrests.

Finally, and perhaps most important, there was a conflict in testimony between the government's own witnesses, Investigators Young and Parker, as to who actually pinpointed the narcotics in question—narcotics which Young testified that he actually saw a buyer throw to the ground. Therefore, even considering only the witnesses and evidence presented in the government's case, there were serious doubts as to critical elements of the government's case.

In assessing a Rule 29(c) motion, made after a deadlocked jury has been discharged, the Court is required to consider all the evidence presented in the case—both from the government and the defense. In addition to the internal inconsistencies in the government's case, the substantially unrebutted testimony presented by the defense in this case casts even more doubt on the case presented by the prosecution. The defense offered six witnesses, three of whom were innocent bystanders who had witnessed the arrest and agreed to come into court and relate what they had seen. These people had no motive to fabricate testimony. In fact, the testimony of these witnesses was in some respects only neutral concerning its direct impact on the question of whether or not the defendant in fact distributed narcotics. However, their testimony was completely inconsistent with, and cast serious doubt upon, the testimony of the police officers regarding the facts of this case.

The Court particularly notes the testimony of Beverly Wright.[2] Ms. Wright testified that she permitted the police to conduct a consensual search of her home for the narcotics at issue in this case at 6:00 on the night of January 30, the date at issue in this case. Tr. at Vol. III at 119. A police officer involved with that search told her that he had seen someone place the narcotics in question in her mailbox. Given this unrebutted testimony, stating that the police conducted such a search, a serious question arises. If the police officers actually saw the drug transaction take place and actually saw the narcotics thrown to the ground near the picnic table, as they testified, why would they need to conduct a search of the interior of a nearby home for the same narcotics?

This Court is cognizant of the fact that determinations of credibility are to be left to the province of the jury. However, as put by the defense it its motion, there must come a point where the government's case is so riddled with inconsistency that as a matter of law "it would result in manifest injustice if the court were to turn a blind eye to the realities of the trial that it had just witnessed." Def. Motion at 6. This case presents one of those rare circumstances. There is considerable doubt over what actually occurred on the night in question—that is whether the defendant is guilty or innocent. That alone is enough to require this Court to grant the Defendant's motion. Indeed that conclusion is supported by the fact that all but one member of the jury did, in fact vote to acquit the Defendant.

Unfortunately, in this case there is more at issue. Little doubt remains that the events of the evening of January 30 did *not* occur as the police officers involved testified—whether or not the Defendant is guilty or innocent. This Court is aware of the immense caseload which most of these officers carry, and it may be possible that the police officers who testified were simply suffering from serious lapses in memory due to the taxing nature of their work.

This Court could not sustain the conviction of a Defendant based on such testimony. Because this Court finds that no reasonable jury could have found the Defendant guilty beyond a reasonable doubt the Defendant's Motion for Entry of a Judgment of Acquittal will be Granted.

---

**2.** Ms. Wright is an elderly woman with four children. One of her sons is a bus driver and another is a Federal Protection Agency police officer.